Filed 11/14/13  P. v. Le CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>BI LE,<br><br>　　　　Defendant and Appellant. | C072751<br><br>(Super. Ct. No. 62108365) |

Defendant Bi Le was arrested and searched subsequent to the arrest.  The arresting officer found methamphetamine in his pocket, and defendant pled no contest to possession of methamphetamine after the magistrate denied his motion to suppress the evidence found on him on the ground that the officer lacked probable cause to arrest him.  On appeal, he contends the trial court erred in denying his motion.  He also contends that the amount of his restitution fine violated the constitutional prohibition against ex post facto laws.  We disagree and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Scott Miller met with a man by the name of "Kevin" (whose real name was Thang Nguyen) on July 4, 2011, to purchase a discounted airline voucher after he saw the voucher advertised on craigslist. Prior to the meeting, Miller went online to confirm the voucher was valid. Miller then met with "Kevin" in a grocery store parking lot and paid cash for the voucher. Miller indicated that he was interested in other vouchers.

"Kevin" texted Miller to tell him he had another voucher to sell. A second meeting was set for July 5, during which Miller was going to purchase the other voucher. After scheduling the July 5 meeting but before the meeting took place, Miller was contacted by the airline and told the first voucher was invalid. Miller called the police to inform them of the invalid voucher and also told them of the scheduled meeting to purchase the second voucher.

When Miller contacted the police, he described "Kevin" as "[a]n Asian male who gave the first name of Kevin only, wearing glasses, a little heavyset." "Kevin" was with a second man Miller described as skinny and Asian. The second man was driving a red convertible.

Officers met in a parking lot on July 5 to watch "Kevin" and the second man. Miller waited in an unmarked car with a detective. While in the parking lot, an officer saw two men who matched the description Miller gave of the two men; they were in a silver truck. Miller identified one of the men as "Kevin," the seller from July 4. Miller said the man with "Kevin" had essentially the same hairstyle and physical make up as the second man from July 4; this man was defendant. The magistrate found that defendant had similar characteristics to the driver from July 4.

Officers watched two phone calls between Miller and "Kevin" while defendant was with "Kevin". After the second phone call, the officers decided to move in to arrest the two because defendant and "Kevin" seemed agitated that Miller had not arrived. Before the officers approached defendant and "Kevin," defendant had already started to

2

walk away. When defendant saw the officers get to "Kevin," defendant started walking away at a very fast walk. An officer caught up with defendant and placed him under arrest.

Detective James Hudson of the Placer County Sheriff's Department arrested defendant for the sale of fraudulent airline tickets. After arresting defendant, Detective Hudson searched him and felt an object in the pocket of his shorts. Detective Hudson asked defendant if the item was marijuana and defendant responded that it was "dope." The item from defendant's pocket turned out to be methamphetamine.

Defendant filed a motion to suppress the evidence taken from him. The court (sitting as a magistrate) found that there was probable cause for the arrest and denied the motion. Defendant then pled no contest to possession of methamphetamine. The court ordered defendant to pay a $240 restitution fine. Defendant did not object to the fine.

DISCUSSION

I

*There Was Probable Cause To Arrest Defendant*

On appeal, defendant argues the magistrate erred in denying the motion to suppress. According to defendant, "[t]he officer lacked probable cause to arrest [him], and thus any evidence discovered as a result of that arrest should have been suppressed as fruit of the poisonous tree." We disagree.

In ruling on a suppression motion, "the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. . . . [¶] The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, viz., the reasonableness of the challenged

3

police conduct, is also subject to independent review.  [Citations.]  The reason is plain: 'it is "the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." ' " (*People v. Williams* (1988) 45 Cal.3d 1268, 1301.)

Warrantless searches are presumptively unreasonable absent an exception. (*United States v. Karo* (1984) 468 U.S. 705, 717 [82 L.Ed.2d 530, 542-543].)  A search incident to a valid arrest is an exception to the requirement for a search warrant.  (*United States v. Jeffers* (1951) 342 U.S. 48, 51-52 [96 L.Ed. 59, 64].)  An arrest without a warrant is valid if it is supported by probable cause.  (*United States v. Watson* (1976) 423 U.S. 411, 417 [46 L.Ed.2d 598, 605].)  "Cause to arrest exists when the facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that the person arrested is guilty of a crime." (*People v. Price* (1991) 1 Cal.4th 324, 410.)  "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances."  (*Maryland v. Pringle* (2003) 540 U.S. 366, 371 [157 L.Ed.2d 769, 775].)  "Each case must be decided on its individual facts, but it is at least clear that the arresting officers must possess more than a mere hunch.  They must be able to point to specific and articulable facts which warranted their suspicion that an offense had been committed and that defendant committed it." (*People v. Hernandez* (1988) 47 Cal.3d 315, 341.)

Defendant contends that "[e]ven if the officers assumed that [defendant] was the same person who had accompanied ["Kevin"] to meet with Miller on the preceding day, they had no evidence at that point amounting to probable cause to arrest [defendant] for a crime."  We disagree.  The People argue that, based on the facts, "a man of ordinary care and prudence could believe or entertain a strong suspicion that [defendant] had

4

committed a crime due to his involvement with ["Kevin"] in selling the fraudulent voucher. [Citation.] As such, the trial court appropriately found that the officers had probable cause to arrest [defendant]. Because the search of his person was incident to a lawful arrest, it too was lawful." We agree with the People and find the search of defendant to have been incident to a lawful arrest. Thus, the magistrate did not err in denying the motion to suppress.

Defendant claims that his " 'brisk walk' from detectives cannot justify his arrest." Defendant relies on *Illinois v. Wardlow* (2000) 528 U.S. 119 [145 L.Ed.2d 570] to support his argument that flight alone cannot justify probable cause. His reliance on *Wardlow* is misplaced. In *Wardlow*, flight alone was not enough to justify probable cause for arrest. (*Id.* at pp. 123-124 [145 L.Ed.2d at pp. 575-576].) Here, there was more than just flight. Defendant not only employed a brisk walk to get away from the officer, but defendant was also seen with "Kevin" during the time prior to the arrest and was identified by Miller as someone with similar characteristics to the driver from the previous day.

Defendant argues that presence at the scene of a crime is not, by itself, enough for probable cause and relies on two cases. Here, however, the officer relied on more than his mere presence. In both of the cases defendant cites, officers had only the fact that the defendant was in the presence of someone smoking marijuana or was in a car from which the officer could smell marijuana. (*In re Antonio B.* (2008) 166 Cal.App.4th 435; *People v. Collier* (2008) 166 Cal.App.4th 1374.) Accordingly, in those cases, officers did not have probable cause for an arrest, but in both cases officers had much less information than the officers did here. (*See In re Antonio B.,* at p. 441; *Collier,* at p. 1377.) Here, the magistrate found that defendant had similar characteristics to the driver on July 4. As such, defendant was at least helping "Kevin" get to the place where the fraudulent voucher would be sold. Thus, based on the totality of the circumstances, an officer of ordinary care and prudence could have reasonably believed or had a strong suspicion that

5

defendant had committed or was committing a crime. Thus, the arresting officer had probable cause to arrest defendant and the magistrate did not err in denying defendant's motion.

## II

### *Defendant Forfeited His Argument Against The Restitution Fine*

Penal Code section 1202.4 requires the court to impose a restitution fine. (Pen. Code, § 1202.4, subd. (b).) Effective January 1, 2012, the minimum amount of restitution fine for a felony increased from $200 to $240. (Pen. Code, § 1202.4, subd. (b)(1), as amended by Stats. 2011, ch. 358, § 1.) Defendant's offense occurred on July 5, 2011, when the minimum fine was $200, but the trial court imposed a $240 restitution fine.

Defendant argues that the "imposition of the increased amount of $240 violates the prohibition against ex post facto laws under both the federal and state [C]onstitutions because [his] offense was committed prior to the effective date of the amended statute and the fine constitutes punishment." The People argue that "[defendant] has forfeited this issue. It is well-established that a defendant may not contest the amount of a restitution fine for the first time on appeal." The People are correct. Defendant forfeited his argument against the amount of the restitution fine by failing to object at sentencing. (*People v. Gamache* (2010) 48 Cal.4th 347, 409 [finding that defendant forfeited his argument against the restitution fine for failing to object at his sentencing hearing]; *People v. Nelson* (2011) 51 Cal.4th 198, 227 [finding that defendant forfeited his claim by failing to object at the sentencing hearing]; *People v. Turrin* (2009) 176 Cal.App.4th 1200, 1207 [finding that defendant could not contest a restitution fine for the first time on appeal].) Defendant offers no argument as to why his argument against the restitution fine was not forfeited. Accordingly, we conclude that defendant's argument against the restitution fine is forfeited.

6

DISPOSITION

The judgment is affirmed.

      ROBIE      , Acting P. J.

We concur:

      MAURO      , J.

      DUARTE      , J.